Stanley Goff, Esq., State Bar No. 289564
15 Boardman Place Suite 2
San Francisco, CA 94103
Telephone: (415) 571-9570
Email: scraiggoff@aol.com

Attorney for Plaintiff Ronald Ross

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD ROSS,<br><br>    Plaintiff,<br><br>vs.<br><br>CITY OF OAKLAND;<br><br>and DOES 1 through 50<br><br>    Defendants. | Case No.:<br><br><br>COMPLAINT FOR DAMAGES FOR:<br>  1.  MALICIOUS PROSECUTION UNDER 42 USC 1983<br>  2.  BRADY VIOLATION UNDER 42 USC 1983 |

**DEMAND FOR JURY TRIAL**

COMPLAINT FOR DAMAGES- 1

# I.

## PARTIES

1.  Plaintiff Ronald Ross brings an action for malicious prosecution and a Brady Rule violation under Federal Statute 42 USC Section1983.

2.  Defendant, Oakland Police Department, is a legal and political entity established under the law of the state of California with all the powers specified and necessarily implied by the Constitution and laws of the State of California.

3. The true names of defendants DOES 1 through 50 are presently unknown to plaintiff, who therefore sues each of these defendants by such fictitious names. Upon ascertaining the true identity of a defendant DOE, plaintiff will amend this Complaint or seek leave to do so by inserting the true name in lieu of the fictitious name. Plaintiff is informed and believes, and on the basis of such information and belief alleges, that each defendant DOE herein is in some manner responsible for the injuries and damages herein alleged and doing the matters herein alleged was acting in the course and scope of his/her employment and under color of state law in his/her official capacity as a member of the Oakland Police Department for the City of Oakland. Hereinafter all defendant parties are referred to as defendant.

COMPLAINT FOR DAMAGES- 2

## II.

## STATEMENT OF FACTS

4. On or around 30 2006, the defendant in his official capacity as an investigating police officer for the Oakland Police Department approached Renardo Williams, hereinafter referred to as "Williams" who was the victim of an attempted murder and produced a line up of 6 photos to Williams to see if he could identify any of the individuals as the person who shot him. The plaintiff's picture was one of the photos.

5. Williams informed the defendant that none of the people in the photos fit the description of the person who had shot him. During the time that Williams told the defendant that none of the people in the photos fit the description of the shooter, the defendant intentionally left his interview recorder off.

6. The defendant then indicated to Williams to pick photo number 4, which was a photo of the plaintiff. Williams felt that he owed the defendant a favor, decided to pick the photo of the plaintiff indicating that he was the person who shot him. At that time, defendant turned on his recorder to take Williams statement.

7. Three days after the shooting of Williams the defendant was contacted by the mother of Travis Abner, who was 14 years old at the time of the incident and was told that Abner was an eyewitness to the shooting of Williams. Despite the absence of any evidence that either Travis or his family was in danger, Travis's mother demanded that the defendant relocate Travis and his family out of their neighborhood prior to her and her son meeting with the defendant.

8. Travis's initial statement to the defendant regarding his description of the plaintiff as the person who shot Williams, was "I seen someone that looked sorta like him from the complexion that I could see when I was at the room in the house. It was kinda dark."

COMPLAINT FOR DAMAGES- 3

9. No other physical evidence was ever discovered that linked the plaintiff to the shooting of Williams.

10. The defendant filed a police report based on the identification provided by Williams and Abner to the Alameda County District Attorney Office, who then initiated criminal proceedings against the plaintiff. The plaintiff was subsequently charged with attempted murder.

11. A jury subsequently found the plaintiff guilty of attempted murder and the plaintiff was sentenced to 32 years to life in state prison.

12. After being incarcerated in state prison for over seven years, the plaintiff, through the help of the Innocence Project located Williams, who signed a declaration under penalty of perjury that he had told the defendant that he did not recognize the plaintiff as the person who shot him but that the defendant refuse to accept his answer and persuaded Williams to pick the photo of the plaintiff anyway.

13. Further, the declaration by Williams stated that he decided to pick the plaintiff as the person who shot him because he felt like he owed the defendant a favor and that he was in fear that if he informed the police of the identity of the true person who actually shot him, that he and his family would be in danger.

14. Also, the plaintiff's attorneys discovered that Abner's initial statement to the investigating officer was inconsistent with the statement he made at the plaintiff's trial in which he unequivocally stated that he recognized the plaintiff as the person who shot Williams.

15. The plaintiff submitted the declaration by Williams and evidence of the inconsistent statements of Abner's identification of the plaintiff in a writ of habeas corpus and his conviction for attempted murder was overturned and he was immediately released from prison.

COMPLAINT FOR DAMAGES- 4

### III.

### FIRST CAUSE OF ACTION
#### *(Malicious Prosecution under 42 USC 1983)*

16. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 15 and incorporates the same herein by reference.

17. Defendant initiated proceedings against the plaintiff leading to his conviction for attempted murder when he provided information in a police report indicating that the plaintiff was the person who shot Williams.

18. That these criminal proceedings terminated in plaintiff's favor when his wrongful conviction for attempted murder was overturned and he was released from prison.

19. That the defendant lacked probable cause to believe that the plaintiff committed the act of shooting Williams because he told the defendant that none of the people presented in the six photos which included a photo of the plaintiff were the individual or individuals who had shot him and that the defendant knew that he persuaded Williams to pick the plaintiff anyway.

20. Further, the defendant lacked probable cause to believe that plaintiff was the person who shot Williams based on Abner's identification of plaintiff as the person who shot Williams because this identification provided by Abner was very uncertain and vague. Further, Abner's identification was unreasonably relied upon by the defendant because it was apparent that Abener's mother contacted the defendant and had Abner provide the identification of the plaintiff so that their family could be relocated.

21. The defendant engaged in malice or a wrongful act when he coerced Williams to pick the photo of the plaintiff even though Williams had said that the plaintiff was not the person who shot him.

22. The defendant engaged in malice or a wrongful act when he unreasonably relied upon the vague and uncertain identification provided by Abner that the plaintiff was the person who shot Williams in an apparent exchange for relocating Abner's family out of a dangerous housing development in Oakland.

23. The plaintiff suffered the damage of being deprived his freedom, the enjoyment of his family and watching his children grow up for seven years.

24. The defendant deprived the plaintiff of his constitutional right to be free from unreasonable seizure of his person pursuant to the 4th Amendment of the United States Constitution when he caused the plaintiff to be incarcerated due to his malicious prosecution of the plaintiff.

25. The defendant deprived the plaintiff of his constitutional right to procedural due process guaranteed by the 5th and the 14th Amendment when he withheld exculpatory evidence from the plaintiff's defense counsel. The exculpatory evidence was the fact that Williams did not identify the plaintiff as the person who shot him until after he was coerced and or forced to do so by the defendant.  This exculpatory evidence would have been material evidence to a jury to determine the innocence or guilt of the plaintiff.

## IV.

## SECOND CAUSE OF ACTION
### *(Brady Rule Violation under 42 USC 1983)*

26. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 25 and incorporates the same herein by reference.

27. The defendant deprived the plaintiff of his constitutional right to procedural due process guaranteed by the 5th and the 14th Amendment when he knowingly withheld exculpatory evidence. The defendant withheld the fact that Williams did not identify the plaintiff as the person who shot him until after he was coerced and or forced to do so by the defendant. This evidence was exculpatory and it would have been material to a jury in deciding the innocence or guilt of the plaintiff.

28. As a direct and proximate result of said wrongful conduct by defendants, and each of them, plaintiffs have suffered damages in an amount to be proven at trial. Plaintiffs currently believe that such damages are in excess of ($32,000,000.00) plus pre and post judgment interest at the maximum rate allowed by law.

COMPLAINT FOR DAMAGES- 7

1    **WHEREFORE**, PLAINTIFF prays for judgment against DEFENDANTS as follows:

2

3        1.  For general and special damages according to proof.

4        2.  For punitive damages according to proof.

5        3.  For attorney fees, unilaterally to PLAINTIFF.

6        4.  For the costs of suit, including expert costs.

7        5.  For such other and further relief as the court deems just and proper.

8

9

10 Dated this 14th day of January, 2014.

11

12

13                Stanley Goff Esq.,

14                Attorney for Plaintiff Ronald Ross

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES- 8