1
2
3
4                          UNITED STATES DISTRICT COURT
5                        NORTHERN DISTRICT OF CALIFORNIA
6
7    RONALD ROSS,                              Case No.  14-cv-00800-MEJ
                   Plaintiff,
8                                             **ORDER RE: MOTION TO DISMISS**
9         v.                                   Re: Dkt. No. 55
10   CITY OF OAKLAND and DEFENDANT
     OFFICER DOE,
11                 Defendants.
12
13                              **I.  INTRODUCTION**
14         Plaintiff Ronald Ross brings this 42 U.S.C. § 1983 case against Defendants City of
15   Oakland (the "City") and Officer Doe, based on Plaintiff's 2006 conviction for attempted murder,
16   a crime he did not commit.  Pending before the Court is the City's Motion to Dismiss Plaintiff's
17   Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), filed August 29,
18   2014.  Dkt. No. 55.  Plaintiff filed an Opposition (Dkt. No. 56) and the City filed a Reply (Dkt.
19   No. 57).  The Court finds this matter suitable for disposition without oral argument and
20   VACATES the October 9, 2014 hearing.  Civ. L.R. 7-1(b).  Having considered the parties'
21   positions, relevant legal authority, and the record in this case, the Court **DENIES** the City's
22   Motion for the reasons set forth below.
23                              **II.  BACKGROUND**
24         The following background is taken from Plaintiff's Third Amended Complaint ("TAC"),
25   filed August 14, 2014.  Dkt. Nos. 53-54.  Plaintiff alleges that Defendant Officer Doe approached
26   Renardo Williams, who was the victim of an attempted murder, and produced a lineup of six
27   photos (including Plaintiff's) to see if Williams could identify any of the individuals as the person
28   who shot him.  TAC ¶ 12.  Officer Doe intentionally left his interview recorder off.  *Id.* ¶ 13.

United States District Court
Northern District of California

Although Williams informed Officer Doe that none of the people in the photos shot him, the officer told Williams to pick photo number 4, which was Plaintiff's photo. *Id.* ¶¶ 13-14. Plaintiff alleges that Williams felt that he owed Officer Doe a favor and decided to pick Plaintiff's photo as the person who shot him. *Id.* ¶ 14. At that time, Officer Doe turned on his recorder to take Williams' statement. *Id.* Plaintiff also alleges that Officer Doe facilitated the relocation of Travis Abner and his family out of a dangerous housing development in Oakland in exchange for Abner identifying Plaintiff as the person who shot Williams. *Id.* ¶ 15. No other physical evidence was discovered that linked Plaintiff to Williams' shooting. *Id.* ¶ 16.

A jury found Plaintiff guilty of attempted murder, and Plaintiff was sentenced to 32 years to life in prison. *Id.* ¶ 23. While incarcerated, Plaintiff, through the help of the Innocence Project, located Williams, who signed a declaration under penalty of perjury that he told Officer Doe that he did not recognize Plaintiff as the person who shot him, but the officer refused to accept his answer and persuaded Williams to pick Plaintiff's photo. *Id.* ¶ 24. Williams' declaration stated that he decided to pick Plaintiff because he felt like he owed Officer Doe a favor and that he was in fear that if he informed the police of the identity of the person who actually shot him, he and his family would be in danger. *Id.* ¶ 25. Plaintiff submitted Williams' declaration, along with other exculpatory evidence, with a writ of habeas corpus. *Id.* ¶ 26. His conviction for attempted murder was overturned and he was released from prison in February 2013. *Id.*

Plaintiff filed the present case on February 21, 2014, and filed an Amended Complaint ("AC") on April 28, 2014. Dkt. Nos. 1, 18-19. In the AC, Plaintiff alleged two causes of action under 42 U.S.C. § 1983: (1) violation of his rights to a fair trial and due process under the Fourteenth Amendment to the United States Constitution, and malicious prosecution in violation of the Fourth and Fourteenth Amendments, against Officer Doe; and (2) municipal liability against the City under *Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978). The City moved to dismiss the *Monell* cause of action against it, arguing that Plaintiff's AC was bereft of any factual allegations demonstrating that Officer Doe was acting pursuant to any official City policy or custom. Dkt. No. 24. On May 28, 2014, the Court granted the City's motion, finding that Plaintiff's *Monell* allegations consisted of a formulaic recitation of the elements of a cause of

action, but failed to contain specific factual allegations tending to support the inference that the City failed to train its employees. *Order re: Motion to Dismiss* at 4-5, Dkt. No. 37. The Court found that Plaintiff could cure this pleading deficiency by alleging additional facts, and therefore granted him leave to amend. *Id.* at 5.

In his TAC, Plaintiff alleges that the City failed to train Defendant Officer Doe in: (1) proper criminal investigative techniques, and in particular conducting a proper photo lineup and not coercing witnesses; (2) handling of exculpatory evidence; (3) knowing when and how to turn over exculpatory evidence, and the constitutional requirement to hand over exculpatory evidence; and (4) knowing when and how to conduct proper criminal investigations of shootings, and in particular conduct proper photo lineups and to refrain from the unlawful coercion of witnesses. TAC ¶¶ 38-41. Plaintiff alleges that the City's failure "to adequately train its law enforcement officers in the constitutional limits of coercing witnesses, failing to hand over exculpatory evidence and the conducting of improper photo lineups . . . can be said to be 'so obvious' that the failure to do so could be properly characterized as deliberate indifference to constitutional rights." *Id.* ¶ 42. Plaintiff further alleges that the City "lack of adequate supervisorial training and or policies and procedures is so gross that it demonstrates the existence of an informal custom of policy of promoting, tolerating, and ratifying the continued unlawful coercion of witnesses." *Id.* ¶ 43.[1] In support of these allegations, Plaintiff identifies two other lawsuits brought by other plaintiffs against the City in this District as probative of a policy of deliberate indifference. *Id.* ¶ 44. Plaintiff contends that these constitute "post-event evidence" of the City's policy of deliberate indifference regarding the inadequate training of its officers. *Id.*

In its Motion, the City argues that Plaintiff's *Monell* allegations still consist of nothing more than the formulaic recitation of the elements of a cause of action. Mot. at 5.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion

---

[1] In the TAC, Paragraph 43 is mislabeled as a second Paragraph 41.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief

2    that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facial

3    plausibility standard is not a "probability requirement" but mandates "more than a sheer

4    possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

5    (internal quotations and citations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the

6    court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the

7    light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519

8    F.3d 1025, 1031 (9th Cir. 2008).  "[D]ismissal may be based on either a lack of a cognizable legal

9    theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v.*

10   *Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations

11   omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a

12   court to dismiss a claim on the basis of a dispositive issue of law").

13          Even under the liberal pleading standard of Rule 8(a)(2), under which a party is only

14   required to make "a short and plain statement of the claim showing that the pleader is entitled to

15   relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of

16   a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555.)

17   "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

18   dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652

19   F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply

20   recite the elements of a cause of action, but must contain sufficient allegations of underlying facts

21   to give fair notice and to enable the opposing party to defend itself effectively").  The court must

22   be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged."

23   *Iqbal*, 556 U.S. at 663.  "Determining whether a complaint states a plausible claim for relief . . .

24   [is] a context-specific task that requires the reviewing court to draw on its judicial experience and

25   common sense." *Id.* at 663-64.

26          If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

27   request to amend the pleading was made, unless it determines that the pleading could not possibly

28   be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

1    banc) (internal quotation marks and citations omitted).

2                                    **DISCUSSION**

3              In its Motion, the City argues that Plaintiff's TAC does not cure the pleading deficiencies

4    identified by the Court in its previous Order.  The City maintains that "[a]lthough they are

5    reshuffled and repackaged, the TAC's *Monell* allegations consist of nothing more than the

6    'formulaic recitation of the elements of a cause of action' that the Court found insufficient in the

7    FAC."  Mot. at 5.  As to the two lawsuits Plaintiff identifies as post-event evidence, the City

8    argues they have nothing to do with the events at issue in this case and, as such, they do not

9    amount to post-event evidence from which a municipal custom can be inferred.  *Id.* at 8.

10             In response, Plaintiff argues  that the TAC "identified the challenged policy/custom of the

11   City of Oakland when it alleged that the City of Oakland has an inadequate policy in place

12   directing its law enforcement officers to know when and how to turn over exculpatory evidence,"

13   as well as "the directing of its law enforcement officers to know when and how to conduct proper

14   criminal investigations of shootings and in particular, conduct proper photo lineups and to refrain

15   from the unlawful coercion of witnesses."  Opp'n at 5.  He further argues that the TAC "explained

16   how the policy or custom was deficient when it alleged that the City of Oakland inadequately

17   trained its law enforcement officers of the constitutional requirement to hand over exculpatory

18   evidence or the engagement of proper investigation techniques" and "how to conduct a proper

19   photo lineup in order to avoid having an innocent person identified as committing a crime that

20   they did not commit."  *Id.* at 5-6.  As to the two post-event cases he cites, Plaintiff argues that

21   cases "filed against the City of Oakland several years after his alleged incident stem from the

22   Oakland Police engaging in acts of malicious prosecution, and false arrest which are the exact

23   same acts of misconduct that the Plaintiff was a victim of."  *Id.* at 8.  Thus, they tend to show "the

24   deliberate indifference on the part of the City of Oakland regarding the inadequate training of its

25   police officers pertaining to misconduct leading to malicious prosecution and false arrest."  *Id.*

26   **A.      Legal Standard**

27             A local government may only be liable under § 1983 for its own action or inaction, not that

28   of its employees.  *Monell*, 436 U.S. at 694; *see also Connick v. Thompson*, 131 S.Ct. 1350, 1359

United States District Court
Northern District of California

1    (2011). As such, a successful *Monell* claim must prove that a government entity's policy, practice,

2    or custom is the "moving force behind a violation of constitutional rights." *Dougherty v. City of*

3    *Covina*, 654 F.3d 892, 900 (9th Cir. 2011). Liability based on a municipal policy may be satisfied

4    one of three ways: (1) when official policies or established customs inflict a constitutional injury;

5    (2) when omissions or failures to act amount to a local government policy of "deliberate

6    indifference" to constitutional rights; or (3) when a local government official with final policy-

7    making authority ratifies a subordinate's unconstitutional conduct. *Clouthier v. Cnty. of Contra*

8    *Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010) (synthesizing Supreme Court authorities).

9        In the past, the Ninth Circuit required plaintiffs in civil rights actions against local

10   governments to plead no more than a "bare allegation" that the government officials' conduct

11   conformed to some government policy or custom. *See, e.g., Shah v. Cnty. of Los Angeles*, 797

12   F.2d 743, 747 (9th Cir. 1986). Today, however, such a claim must adhere to two principles. *AE*

13   *ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (citing *Starr*, 652 F.3d at

14   1216).

15       First, to be entitled to the presumption of truth, allegations in a
         complaint or counterclaim may not simply recite the elements of a
16       cause of action, but must contain sufficient allegations of underlying
         facts to give fair notice and to enable the opposing party to defend
17       itself effectively. Second, the factual allegations that are taken as
         true must plausibly suggest an entitlement to relief, such that it is not
18       unfair to require the opposing party to be subjected to the expense of
         discovery and continued litigation.

19

20   *Starr*, 652 F.3d at 1216.

21   **B.    Application to the Case at Bar**

22       In his TAC, Plaintiff alleges that the City's lack of adequate training amounts to a policy of

23   deliberate indifference to his constitutional rights. TAC ¶ 44. The Supreme Court has held that

24   inadequate training may constitute a "policy" under *Monell* that gives rise to municipal liability."

25   *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1988); *Long v. Cnty. of Los Angeles*, 442 F.3d

26   1178, 1186 (9th Cir. 2006). "The issue is whether the training program is adequate and, if it is

27   not, whether such inadequate training can justifiably be said to represent municipal policy." *Long*,

28   442 F.3d at 1186. A plaintiff alleging a failure to train claim must show: (1) he was deprived of a

United States District Court
Northern District of California

United States District Court
Northern District of California

1    constitutional right, (2) the municipality had a training policy that "amounts to deliberate

2    indifference to the [constitutional] rights of the persons' with whom [its police officers] are likely

3    to come into contact;" and (3) his constitutional injury would have been avoided had the

4    municipality properly trained those officers.  *Blankenhorn v. City of Orange*, 485 F.3d 463, 484

5    (9th Cir. 2007); *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001).  "Only where a

6    municipality's failure to train its employees in a relevant respect evidences a 'deliberate

7    indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city

8    'policy or custom' that is actionable under § 1983."  *City of Canton*, 489 U.S. at 389; *Long v. City

9    & Cnty. of Honolulu*, 511 F.3d 901, 907 (9th Cir. 2007).

10       A municipality is "deliberately indifferent" when the need for more or different action, "is

11   so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of

12   constitutional rights, that the policymakers ... can reasonably be said to have been deliberately

13   indifferent to the need."  *City of Canton*, 489 U.S. at 390; *Lee*, 250 F.3d at 682.  A "pattern of

14   tortious conduct," despite the existence of a training program, or "highly predictable"

15   constitutional violations due to a "failure to equip law enforcement officers with specific tools to

16   handle recurring situations," are circumstances in which liability for failure to train may be

17   imposed.  *See Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 407-10 (1997); *Long*, 442 F.3d at

18   1186-87.  However, "adequately trained officers occasionally make mistakes; the fact that they do

19   says little about the training program or the legal basis for holding the [municipality] liable."  *City

20   of Canton*, 489 U.S. at 391; *see also Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir.

21   1989); *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000).

22       Here, Plaintiff has identified the challenged policy/custom (inadequate training regarding

23   proper criminal investigative techniques, including conducting a proper photo lineup and coercion

24   of witnesses); explained how the policy/custom was deficient (training fails to avoid situations in

25   which an innocent person is identified as having committed a crime they did not commit);

26   explained how the policy/custom caused his harm (Plaintiff was incarcerated for seven years); and

27   reflected how the policy/custom amounted to deliberate indifference (failure to provide proper

28   training is likely to deprive individuals of their Fourth and Fourteenth Amendment rights).  TAC

¶¶ 33, 41-42.  While Plaintiff has not alleged a pattern of similar violations demonstrating the City's deliberate indifference to his constitutional rights, Plaintiff has alleged sufficient facts that, if proven, may establish that the consequences of the City's failure to train were so obvious that it can be held liable under § 1983 without proof of a preexisting pattern of violations.  Viewing the allegations in the TAC in the light most favorable to Plaintiff, the Court finds that he has stated a *Monell* claim that is plausible on its face.  It is plausible that the City's failure to train was so obviously deficient that it could be subject to liability under § 1983 as a result of a single incident. Accordingly, the City's motion must be denied.  As Plaintiff's *Monell* claim states a claim upon which relief may be granted, the Court need not address the parties' arguments regarding post-event evidence.

CONCLUSION

Based on the analysis above, the Court DENIES the City's Motion to Dismiss.  The Court shall conduct a Case Management Conference on October 16, 2014 at 10:00 a.m. in Courtroom B. The parties shall file their joint statement by October 9.  All related deadlines are adjusted accordingly.

**IT IS SO ORDERED.**

Dated: September 22, 2014

_____

MARIA-ELENA JAMES
United States Magistrate Judge